UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

MELANIE VARNER,

    Plaintiff,

vs.

PLAYA MANAGEMENT USA, LLC, a Delaware limited liability company; RESORT ROOM SALES, LLC, a Delaware Limited Liability Company; PLAYA RESORTS MANAGEMENT, LLC, a Delaware limited liability company; PLAYA HOTELS & RESORTS N.V., a foreign corporation; HYATT HOTELS CORPORATION; a Delaware corporation; HYATT FRANCHISING LATIN AMERICA, LLC, a Delaware limited liability company; HYATT INTERNATIONAL CORPORATION, a Delaware corporation, PLAYA HALL JAMAICAN RESORT LIMITED, a Jamaican company;

    Defendants.
_____/

**COMPLAINT**
**(NEGLIGENCE)**

The plaintiff, Melanie Varner, sues defendants, and pursuant to Rule 15(a)(2), F.R.C.P., hereby files her Complaint and states:

**Jurisdiction and Venue**

1. This is a 28 USC §1332(a) diversity cause of action for an amount in controversy and damages, which exceeds seventy-five thousand dollars ($75,000.00), stemming from a personal injury at the Hyatt Ziva Rose Hall Resort in Jamaica, and complete diversity exists between plaintiff and defendants.

2. Plaintiff, Melanie Varner, is a citizen of Michigan, and at all times mentioned herein was and is *sui juris*.

3. No defendant is a citizen of or incorporated in Michigan, nor does any defendant

1

have its principal place of business or main office in Michigan, nor do any of the defendants that are limited liability companies have any member that is a citizen of the State of Michigan or have their principal place of business in Michigan, as more fully alleged hereinafter.

4. The following is an overview of the entities involved in the ownership, management and operation of the Hyatt Ziva Rose Hall Resort (the "Resort"), and maintaining it to the standards of Hyatt Ziva standards:

**A. The Playa Defendants:**

1) **Playa Management USA, LLC** is a Delaware limited liability company registered to do business in Florida. Its principal place of business is located in Florida at 1560 Sawgrass Corporate Parkway, Suite 310, Fort Lauderdale, FL 33323. Playa Management USA, LLC is a subsidiary of, and an operational management component in the USA of defendant **Playa Hotels & Resorts N.V.** Playa Management USA, LLC is owned by defendant **Resort Room Sales, LLC.**, who is its sole member, and who is not a Michigan company, nor do it or its members have their primary place of business there or are citizens there. Playa Management USA, LLC provides overall supervision and control of the management and operation of the Resort, as admitted in its Answer and Affirmative Defense [D.E. 13, ¶21] In the Matter of S.D. v. Playa Hotels and Resorts, B.V., Playa Resorts Management, Hyatt Hotels Corporation, Hyatt Franchising Latin America, LLC, Playa Management USA, LLC, and Playa Hall Jamaican Resort Limited, Civil Action No. 1:17-CV-05076-JBW-RLM, United States District Court for the Eastern District of New York.

2) **Resort Room Sales, LLC,** is a Delaware limited liability company, with its principal place of business in Delaware or Fairfax, Virginia, but at any rate, not in Michigan. Resort Room Sales, LLC is a subsidiary of and an operational management component in the USA of **Playa Hotels & Resorts N.V.** Resort Room Sales, LLC is 100 percent owned by **Playa Resorts Management, LLC.** None of this defendant's members is a citizen of the State of Michigan or has its or their citizenship or principal place of business in Michigan.

3) **Playa Resorts Management, LLC** is a Delaware limited liability company authorized to do business in Florida, with its principal place of business in Fairfax, Virginia. Playa Resorts Management, LLC is the sole member of Resort Room Sales, LLC. Playa Resorts Management, LLC is a subsidiary of, and an operational management component in the USA of **Playa Hotels & Resorts N.V.** Playa Resorts Management, LLC is 100 percent owned by **Playa H&R Holdings B.V.**, a foreign corporation, which is 100% owned by **Playa Hotels and Resorts N.V.** None of this defendant's members is a citizen of the State of Michigan or has its or their citizenship or principal place of business in Michigan.

4) **Playa Hotels & Resorts N.V.** is a foreign corporation that owns and manages the Resort, along with the other defendants. Playa Hotels & Resorts N.V.'s corporate office and principal place of business is in Amsterdam, Netherlands. Playa Hotels & Resorts N.V. is the corporation that succeeded Playa Hotels & Resorts B.V., which was the corporation in place at the time of plaintiff's injury. Its Chief Operating

3

Officer and Chief Marketing Officer work through the aforementioned Playa Management USA, Fort Lauderdale offices at Sawgrass Corporate Parkway. Its principal place of business in the USA is not Michigan. Playa Hotels & Resorts N.V. (or its precursor B.V.) signed the franchisee agreement for the Playa Defendants with defendant **Hyatt Franchising Latin America, LLC.,** which is identified in the next lettered subsection below.

5) **Playa Hall Jamaican Resort Limited, d/b/a the Hyatt Ziva Rose Hall, or as is referred to herein, the Resort,** is a company incorporated in Jamaica, with its principal place of business in Jamaica, which owned, managed and operated the Resort at the time plaintiff was injured, and still does. This defendant's principal place of business in the United States is Florida in this jurisdiction and, at any rate, is not Michigan. Despite Playa Hotels & Resorts N.V. (or its precursor B.V.) having signed the franchise agreement for the Playa Defendants with defendant Hyatt Franchising Latin America, LLC, but in an affidavit filed in In the Matter of S.D. v. Playa Hotels and Resorts, B.V., *et al., supra,* [D.E. 17-3, ¶10-11], the Hyatt Defendants' affiant swears that franchise agreement is directly between Hyatt Franchising Latin America, LLC and this defendant Playa Hall Jamaican Resort Limited.

6) The Playa Defendants have interrelated management, officers, directors and ownership with each other.

7) The Playa Defendants share in the profits and losses of the Resort.

**B. The Hyatt Defendants:**

1) **Hyatt Franchising Latin America, LLC** is a Delaware limited liability company, with its principal place of business in Illinois. Its sole member is Hyatt International Corporation, which is a Delaware corporation with its principal place of business in Illinois. Hyatt Franchising Latin America, LLC's parent corporation is Hyatt Hotels Corporation. Hyatt Franchising Latin America, LLC franchises Hyatt brands and other proprietary marks throughout Latin America and the Caribbean. Hyatt Franchising granted the right to the Resort to operate the Resort under the Hyatt Ziva licensed brand and other proprietary marks. To protect the franchised brand, the franchisor agreed to the responsibility of enforcing operating safeguards on the franchisee to insure that the Resort would operate the franchise in strict compliance with its systems and operating standards, assuming a partnership or joint venture role with the Resort.

2) **Hyatt International Corporation** is a Delaware corporation with its principal place of business in Illinois.

3) **Hyatt Hotels Corporation** is a Delaware Corporation with its principal place of business in Illinois. Hyatt Hotels Corporation is the parent company for Hyatt Franchising Latin America, LLC.

4) The Hyatt Defendants have interrelated management, officers, directors and ownership with each other.

      5) The Hyatt Defendants share in the profits of the Resort through the franchise agreement and in the losses of the Playa Defendants as shareholders.

5. Defendants make up large and diverse hotel company operation, and among other things, partner or have a joint venture or common operation to manage and operate the Resort. The Playa Defendants and the Hyatt Defendants have what they describe as a strategic relationship with each other that provides the Playa Defendants with a range of benefits, including the right to operate the Resort in Jamaica under the Hyatt All-Inclusive Resort Brands, and the Playa Defendants and Hyatt Defendants have representation on each other's boards for their various interrelated businesses.

6. At all times material hereto, the defendants were operating within and/or actively and regularly marketing and soliciting business in this district, as well as throughout the world. Jurisdiction is proper in this district because the defendants are engaged in substantial and not isolated activity within this state, and they are conducting, engaging in, or carrying on business ventures in this state, as well as solicitation of business within this state, specifically by way of maintaining sales teams and marketing teams here, regularly physically appearing in this jurisdiction to solicit business, otherwise advertising here, accepting reservations directly from this jurisdiction, as well as accepting reservations from this jurisdiction through their interactive and interrelated web sites, allowing Florida travel web sites to post links to their web sites and accepting funds from this jurisdiction and making purchases from this jurisdiction for the operations of the Resort.

7. Specifically, with regard to the defendants, upon information and belief:

A. Defendants' officers, directors and management personnel meet and conduct business, not on an isolated basis but regularly in this jurisdiction.

B. At all times, defendants further subjected themselves to jurisdiction in Florida through their websites from which they mutually benefit, which target residents in Florida. All defendants benefit from the U.S. websites, and no defendant disclaims its operation in and from Florida. Residents of Florida and Michigan are able to use their interactive website to book vacations at the Resort, request and receive price quotes mailed to their home address or email address, and to enter their zip code into the website to obtain a list of travel agents in Florida and Michigan, who sell the defendants' products, including booking for the Resort.

C. At all times material to this Complaint, defendants purposely availed themselves of the privilege of doing business in the State of Florida and by virtue of its substantial and systematic business contacts within the State of Florida subjecting themselves to this Court's jurisdiction, by, among other things, buying product for the Resort and shipping out of the Port of Miami and Port Everglades.

D. At all times material hereto, defendants regularly solicited business in the State of Florida for travel to their resort facilities, including the Resort.

E. At all times relevant hereto, defendants sold prepaid, all-inclusive vacation packages through one of more of the named defendants, the economic activity from which resulted in income generated in the United States, a portion of which remains in the United States, and inured to the benefit of the named defendants, with the remaining portion of such income transferred or credited to certain financial institutions outside of the United States for the benefit of the defendants and the operation of the Resort.

F. The defendants have availed themselves to, invoked and subjected themselves to the jurisdiction of Courts within this jurisdiction and others in the United States by filing lawsuits as plaintiff, as well as filing for the federal trademark protection of the United States.

G. All defendants, either directly or through active or apparent agents or alter egos, and as joint adventurers at the time of the injury at the Resort: (a) operated, conducted, engaged in, or carried on a business or business ventures in the State of Florida, and/or had or have offices or agencies in the State; and (b) at all relevant times engaged in substantial and not-isolated activity within the state so as to make them amenable to suit pursuant §48.193(1)(a), F.S., and/or §48.193(2) F.S., and further amenable to service of process.

8. Venue is proper in this court pursuant to the Federal Courts Jurisdiction and Venue Clarification Act of 2011 which took effect on January 6, 2012, and 28 USC 1391(b)(3) directs that venue for both diversity and federal question matters shall fall back to a judicial district "in which any defendant is subject to the court's personal jurisdiction with respect to such action," meaning that where there is jurisdiction over a foreign party, whether a natural person or a corporation, there also is venue.

9. At all times material to this Complaint, the Resort's personnel were agents, officers, managers, servants, borrowed servants, workers and/or employees of defendants and were acting within the course and scope of their authorized official capacity and/or within the course and scope of their capacity as agents or servants of the defendants.

10. No Release/Waiver/Agreement to Jurisdiction: Mrs. Varner did not sign any agreement or registration form, nor was she married to her husband at the time that he may have signed any. Regardless of whether she was married at the time any document with any defendant

was signed, no one, who signed either for the room she was in or for the wedding had any express authority or implied authority from her to agree on her behalf to any release/waiver clause or any jurisdiction clause, if any defendant claims that one applies. No one ever communicated to her, at any time, that there was any release/waiver clause or a jurisdiction clause included in the wedding arrangements or registration form, and she was never asked by anyone at the Resort if her fiance had any authority to act on her behalf, nor did she ever indicate to anyone that he had any authority act on her behalf to waive any of her rights, to release anyone, or to agree to jurisdiction anywhere were she to be injured in Jamaica by any defendant's negligence. Moreover, the Resort did not communicate any warning to plaintiff in any form of communication at any time that any agreement or registration form had her giving up any rights, releasing anyone or agreeing to jurisdiction.

**Facts of the Case as they Relate to Liability and Damages**

11. Prior to January 11, 2016, plaintiff's fiancé, Jon Sipila, purchased a vacation package and wedding package from the Resort, with payments made in Michigan to the Resort or an agent of the Resort.

12. When he and the plaintiff arrived at the Resort, Mr. Sipila registered them.

13. Plaintiff was injured on **January 11, 2016,** the day of her wedding, when she slipped and fell at the Resort. Plaintiff was entering her wedding reception, being introduced to all of her wedding guests, when she slipped and fell in front of all of her guests due to ice water leaking from a cold food station operated and maintained by the Resort.

14. Because of the color and texture of the floor and the lighting, plaintiff did not see the puddle of water in which she slipped.

15. Plaintiff injured her left knee, requiring ACL reconstruction surgery, as well as surgery to repair her torn meniscus.

16. Plaintiff's injuries occurred as a result of, and were proximately caused by the careless, negligent conduct of the defendants, and their failure to properly man, maintain, control and supervise the cold food station and failure to maintain a safe environment for plaintiff and others and failure to maintain the Resort to Hyatt Ziva standards, the defendants' negligence consisting of, *inter alia,* the following:

   A. Negligently failing to properly man, maintain, control and supervise the cold food station for plaintiff's reasonable safety and the guests' reasonable safety in a Resort provided function;

   B. Negligently failing to properly instruct, train and supervise the Resort's personnel running the catering portion of plaintiffs' wedding reception;

   C. Negligently failing to properly man the wedding reception with a sufficient number of staff or safety personnel;

   D. Negligently failing to maintain and equip the hotel regarding its guests' safety, so as to furnish to plaintiff a reasonably safe resort, free from hazards which were recognized or should have been recognized by defendants, causing or likely to cause the serious physical harm to plaintiff and others;

   E. Negligently failing to maintain the premises operated and managed and overseen by defendants in a reasonably safe condition for plaintiff and others;

   F. Negligently failing to have procedures in place to ensure that the cold food station would not leak and cause slip and fall injuries from the leaking ice water;

   G. Negligently failing to exercise the degree of care required under the circumstances.

17. The defendants were the cause of the leak, being the ones in control and in charge of the leaking cold food station and were thereby on notice of same, and/or the puddle, based on

its size, and the defendants' poor procedures for identifying same, had been present for a sufficient amount of time for the defendants to identify the problem and fix it before someone was injured.

18. As a result of her injuries, plaintiff suffered and will continue to suffer personal injury, pain, inconvenience, economic damages from lost work, emotional distress, medical expenses, mental anguish and loss of enjoyment of life, and she will suffer same for the rest of her work life and life.

WHEREFORE, plaintiff demands judgment for damages and court costs against defendants.

PLAINTIFF DEMANDS A TRIAL BY JURY.

Dated this 10th day of January, 2019.

                              Respectfully Submitted,

                              PETER M. COMMETTE, P.A.
                              Attorney for Plaintiff
                              1323 Southeast 3rd Avenue
                              Fort Lauderdale, FL 33316
                              954-764-0005 Fax: 954-764-1478
                              Primary Email: PMC@commettelaw.com
                              Secondary Email: PMCommette@aol.com
                              Secondary Email: Paralegal1@commettelaw.com

By:    */s Peter M. Commette, Esq.*
        PETER M. COMMETTE, ESQ.
        FBN# 350133